**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                                                        Case No. 03-CR-194

**TINIKI GREER**
        **Defendant.**

---

### SENTENCING MEMORANDUM

The government indicted defendant Tiniki Greer and 18 others for conspiring to distribute more than 5 kilograms of cocaine. 21 U.S.C. §§ 841(a)(1) & (b)(1)(A). Subsequently, the government entered into an agreement with defendant pursuant to which she pleaded guilty to using a telephone to facilitate drug trafficking in violation of 21 U.S.C. § 843(b).

The probation office prepared a pre-sentence report ("PSR") recommending a base offense level ("OL") of 28 based on a drug weight of 2 to 3.5 kilograms of cocaine. U.S.S.G. §§ 2D1.6(a) & 2D1.1(c)(6). The PSR also recommended a 4 level minimal role reduction under § 3B1.2(a) and a 3 level reduction for acceptance of responsibility under § 3E1.1, for a final OL of 21. The PSR put defendant's criminal history category at III, thus she faced a guideline imprisonment range of 46-57 months, although the offense of conviction capped the sentence at 48 months. 21 U.S.C. § 843(d)(1); U.S.S.G. § 5G1.1(c)(1). Defendant objected to the drug weight determination and moved for a downward departure under U.S.S.G. § 5K2.0, and the government requested a sentence

at the low end of the guideline range. In this memorandum I address the parties' contentions and set forth the reasons for the sentence imposed.

## I. SENTENCING PROCEDURE

In light of United States v. Booker, 125 S. Ct. 738 (2005), I typically follow a three-step sentencing process. First, I determine the applicable advisory guideline range, resolving any factual disputes. Second, I determine whether, pursuant to the Sentencing Commission's policy statements, any departures from the advisory guideline range clearly apply. Finally, I determine the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Pallowick, 364 F. Supp. 2d 923, 925-26 (E.D. Wis. 2005). However, if I have decided to impose a non-guideline sentence, I need not definitively resolve all of the factual issues necessary to determine the guideline range or whether a departure would be appropriate under the Commission's policy statements. United States v. Crosby, 397 F.3d 103, 112 (2d Cir. 2005).

## II. APPLICATION

**A.   Guideline Calculations**

The government alleged that defendant was part of a large scale drug conspiracy headed by her cousin, Jerome Stovall, and brother, Darylvocia Greer, which from 1996 to 2003 distributed over 150 kilograms of cocaine. The conspiracy operated primarily through a number of lower level dealers including Tamar Taylor, defendant's boyfriend.

The PSR made clear that defendant did not sell, store or handle drugs or money. It stated that on one occasion she drove Taylor so that he could pick up 9 ounces of cocaine from Stovall, made several phone calls regarding the activities of members of the

2

conspiracy, and was aware of and discussed with a confidential informant ("CI") 1 kg of cocaine Stovall possessed and 1-1/3 kg of cocaine Greer had when he was pulled over by police.

In reviewing the PSR, I was uncertain about the significance of the phone calls and initially concluded that the government and the PSR erroneously assigned relevant conduct to defendant based merely on her knowledge of the activities of Stovall and Greer. U.S.S.G. § 1B1.3(a)(1) provides that in the case of jointly undertaken criminal activity the defendant is accountable only for conduct that was both (1) in furtherance of the jointly undertaken criminal activity and (2) reasonably foreseeable in connection with that criminal activity.

> A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct (e.g., in the case of a defendant who joins an ongoing drug distribution conspiracy knowing that it had been selling two kilograms of cocaine per week, the cocaine sold prior to the defendant joining the conspiracy is not included as relevant conduct in determining the defendant's offense level).

U.S.S.G. § 1B1.3 cmt. n.2. The application note also provides this example:

> Defendant O knows about her boyfriend's ongoing drug-trafficking activity, but agrees to participate on only one occasion by making a delivery for him at his request when he was ill. Defendant O is accountable under subsection (a)(1)(A) for the drug quantity involved on that one occasion. Defendant O is not accountable for the other drug sales made by her boyfriend because those sales were not in furtherance of her jointly undertaken criminal activity (i.e., the one delivery).

Id. cmt. n.2(b)(5).

However, at sentencing the government provided additional information, indicating that defendant essentially attempted to middle a deal with the CI for the 1 kg of cocaine Stovall had and, acting in furtherance of the conspiracy, tried to determine who had tipped

3

off the police to the fact that Greer had 1-1/3 kg of cocaine in his car. Defendant did not object to the government's evidentiary proffer or request a hearing, and withdrew the objection in light of the additional facts presented.

Thus, I added Stovall's 1 kilogram and Greer's 1-1/3 kilograms to the 9 ounces (255.15 grams) defendant helped Taylor pick up,[1] for a total between 2 and 3.5 kilograms and set defendant's base OL at 28. However, I also noted that based on my analysis of the § 3553(a) factors I intended to impose a non-guideline sentence, regardless of the precise drug weight. See Crosby, 397 F.3d at 112.

**B.     Departure**

Defendant moved for departure under § 5K2.0, arguing that her offense was atypical because she did not actually sell drugs but merely associated with others who did. I declined to rule on the motion because it was not based on a clearly applicable policy statement and because I concluded that defendant's argument was best addressed under § 3553(a). See Crosby, 397 F.3d at 112.

**C.     Section 3553(a)**

In imposing sentence, I consider the factors set forth in § 3553(a), which include:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[1]This amount plainly qualified as relevant conduct under § 1B1.3 cmt. n.2(b)(5).

4

>    (3)    the kinds of sentences available;
>
>    (4)    the advisory guideline range;
>
>    (5)    any pertinent policy statements issued by the Sentencing Commission;
>
>    (6)    the need to avoid unwarranted sentence disparities; and
>
>    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, I must "'impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2).'" United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005) (quoting 18 U.S.C. § 3553(a)). I typically group the § 3553(a) factors into three categories: the nature of the offense, the history of the defendant, and the needs of the public and any victims. United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). I then consider the types of sentences available, the guidelines and policy statements, and the need to avoid disparity in order to produce a reasonable numerical sentence.

> **1.    Nature of Offense**

Defendant did not sell cocaine but was the girlfriend, sister and cousin of men who did. On several occasions, she helped them in relatively small ways. Thus, although the offense was serious, her involvement was minimal.

> **2.    Character of Defendant**

Defendant was 29 and had children aged 11 and 7. I had previously sentenced the children's father, John Mays, to a lengthy prison term for his own (unrelated) drug activities. Defendant was intelligent and capable but had made a number of bad decisions. She had been convicted of a number of relatively minor offenses such as shoplifting, obstructing an

5

officer, disorderly conduct, criminal damage to property and possession of marijuana. She had lost two jobs because of dishonesty and abused marijuana. She also seemed to make poor choices in men, first getting involved with Mays, now in prison, then Taylor, who got her into this conspiracy. Defendant's poor choices were somewhat difficult to understand given that, unlike many defendants I see, she came from an intact family and seemed to have a pretty good childhood. At sentencing, more than a score of defendant's family members appeared in court to show their support.

On the positive side, defendant had done well on pre-trial release. The magistrate judge placed her on electronic monitoring, and, after a few early problems, defendant was fully compliant and later reduced to curfew status. She had 47 negative tests for marijuana and only one positive. She participated in mental health and drug treatment and seemed engaged in it. In addition, defendant displayed a commendable commitment to her own education. She had graduated from high school and was about to receive a degree from Concordia University. She also owned her own home where she lived with her children and younger sister. She appeared to be a good mother, and her children were doing well. In addition, I received laudatory letters from her sister,[2] cousin, mother and John Mays.[3] She was again pregnant at the time of sentencing, with a due date of 12/7/05. Defendant's

---

[2] Defendant's sister stated that defendant served as a role model and had encouraged her to stay in school and get her degree.

[3] Mays asked me to allow defendant to continue caring for his children while he was incarcerated. He indicated that when he was a child, his mother was in and out of prison and that he was abused in foster care. He stated that his brother was hit by a car and killed when a negligent care-giver allowed him to run into the street. He worried that his own children could meet a similar fate if defendant were imprisoned.

6

employment record was decent. Although she had not held a long-term job, she had been steadily employed when not in school.

In sum, her character was mixed. She obviously had a lot of potential and ability, but consistently made poor choices and displayed an inability to fully conform her conduct to the requirements of the law.

### 3. Needs of Public

Nothing in defendant's character and background suggested that she was dangerous, and given the marginal nature of her participation in the offense, I did not believe that it was necessary to incarcerate her to reflect the seriousness of the offense, promote respect for the law, or provide just punishment. Further, defendant had medical and other correctional treatment needs (e.g., pre-natal care, drug and mental health treatment), most effectively dealt with in the community.

### 4. Consideration of Guidelines

The guidelines called for a term of 46-48 months. However, under all of the circumstances, this range was greater than necessary to satisfy the purposes of sentencing. 18 U.S.C. § 3553(a)(2). Indeed, I found that no period of imprisonment was appropriate. If defendant were imprisoned, her two young children would suffer dearly. Defendant's mother had serious medical problems, and defendant's sister was only 20 and a full time student with a part-time job. The children's father was in prison. Thus, sending defendant to prison would likely require the children to be placed in foster care. Further, requiring her to give birth in prison, then lose custody of her new born could cause severe damage to both her and the child. See United States v. Eisinger, 321 F. Supp. 2d 997,

7

1005 n.1 (E.D. Wis. 2004).[4]  Finally, the community would be ill-served if defendant's house became vacant or if her sister had to scramble to sell it or keep up the payments while in school.  These circumstances strongly supported allowing defendant to remain in the community.

As discussed, defendant's relationship to the conspiracy was marginal, and it resulted entirely from her relationship to several males.  The Public Safety, Sentencing and Incarceration Reform Caucus of the U.S. House of Representatives recently held a briefing on "The Girlfriend Problem: How Sentencing Laws Affect Women and Children," stating:

> Women are the fastest growing group in the ever-expanding prison population. Sentencing laws have caused the number of women behind bars to explode, leaving in the rubble displaced children and overburdened families.  Current drug laws punish not just those who sell drugs, but also a wide range of people who help or associate with those who sell drugs.
>
> The length of a sentence usually depends on the quantity of drugs a person possesses or distributes.  Where a person is charged with conspiracy in a drug crime, sentences often reflect the total amount of drugs possessed or sold by everyone in the operation.  As a result, even when they have minimal, if any, involvement in the drug trade, non-violent women with little or no prior criminal history are increasingly captured in the ever widening net cast by the war on drugs.  They are often subjected to the same, or in some cases, harsher sentences than the principals in the drug trade at whom the sentencing statutes were aimed.  In too many cases, women are punished for the act of remaining with a boyfriend or husband engaged in drug activity, who is typically the father of her children.  Many of these women have histories of physical and sexual abuse and/or untreated mental illness.

---

[4] As I noted in Eisinger, research suggests that if the mother-child bond is disrupted between the ages of six months and four years, a child's development may be greatly effected.  The consequences for these children are emotional as well as physical.  See Developments in Law: Alternatives to Incarceration, 111 Harv. L. Rev. 1921, 1930-31 (May 1998) ("Infants will miss the critical time period for forming bonds with their mothers; this period of separation has serious developmental and behavioral consequences. Infants of incarcerated mothers face unique physical deprivations as well, as separation of infants from their mothers prevents breast-feeding.").

8

> Ill-informed policies spawned by the war on drugs adversely impact children. In 1999 almost 1.5 million minor children had an incarcerated parent, with over 65% of women incarcerated in state prison having a minor child. The children are often placed in the care of friends or family – often leading to financial and emotional hardships – or end up in an overburdened child welfare system where they are at increased risk of becoming victims of sexual or physical abuse or neglect.

See Legislative Briefing on "The Girlfriend Problem", at http://sentencing.typepad.com/sentencing_law_and_policy/2005/06/legislative_bri.html (last visited June 27, 2005). Defendant was one of the women the Caucus was concerned about. See also Leslie Acoca and Myrna S. Raeder, Severing Family Ties: The Plight of Nonviolent Female Offenders and Their Children, 11 STAN. L. & POL'Y REV. 133 (Winter 1999).

### 5. Types of Sentences Available

Probation was an available sentence for defendant's crime, 18 U.S.C. § 3561(a), and I concluded that a sentence of probation with strict conditions was the best option under § 3553(a)(3). First, I could impose a probationary sentence of five years, long enough to allow extended monitoring of defendant and to ensure that she complied with the law and addressed her own needs over a relatively long period of time. Conversely, in § 843(b) cases, supervised release may not exceed one year, see 18 U.S.C. § 3583(b)(3), which would have been insufficient in the present case. Based on the § 3553(a) factors (particularly defendant's record), I believed it necessary to impose a long period of supervision.

Second, a sentence of probation allowed me to impose conditions required under § 3553(a)(2). Defendant had medical, correctional, drug and mental health treatment needs that were best met in the community. While on pre-trial release, she had

9

progressed in these areas, and a sentence of probation allowed her to continue to work on them. I also believed that the cognitive intervention program would be helpful in addressing defendant's attitude issues and imposed it as a condition of probation.

I further ordered that as a condition of probation defendant be confined to her home, except for employment/education, medical appointments, and other activities approved in advance by probation, for a period of six months. This was a permissible condition of probation under § 3563(b)(19) and was reasonably necessary under § 3553(a)(2) to protect the public from further crimes of the defendant, to provide punishment and deter criminal conduct, and to ensure that she attended to her correctional and medical treatment needs. Section 3553(a)(2) did not suggest that prison was necessary to satisfy these purposes, but home confinement was a reasonable alternative.[5]

This sentence protected the public, met defendant's needs, and provided just punishment, while not harming her children or society. Because the sentence was strongly supported by the peculiar facts of the case, it did not create <u>unwarranted</u> disparity.

### 6. Imposition of Sentence

Therefore, I placed defendant on probation for period of five years, on the conditions that she not commit any crimes; possess no firearms or dangerous weapons, or illegally possess or use any controlled substance; cooperate in the collection of DNA; participate in a program of testing and residential or outpatient treatment for drug and alcohol abuse;

---

[5] I recognized that the Commission adopted a policy statement endorsing the use of home confinement as a condition of probation but only as a substitute for imprisonment. U.S.S.G. § 5F1.2. My use of home confinement in the present case, while not pursuant to § 5C1.1, was consistent with this policy. For the reasons stated, I concluded that imprisonment was not appropriate but that a period of home confinement in lieu of prison served the purposes of § 3553(a)(2).

10

participate in a mental health treatment program; participate in the cognitive intervention program; comply with the conditions of home confinement for a period not to exceed six months; reside at 4766 N. 42nd Street, Milwaukee, unless the court approved a different address; and have no contact with the confidential informant.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 27th day of June, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge